UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRUCE A. MORRISON**,<br><br>                            Plaintiff,<br><br>       v.<br><br>**KRISTI NOEM**, in her official capacity as Secretary of the U.S. Department of Homeland Security, and<br><br>**RODNEY SCOTT**, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>                            Defendants.[1] | Case No. 1:24-cv-01765 (TNM) |

## MEMORANDUM OPINION

Travelers who are part of the Global Entry program can breezily sweep through airline security. The same is not necessarily true of federal courthouse doors. Bruce Morrison sued senior officials in the Department of Homeland Security (collectively, "the Secretary") for revoking his Global Entry status a few years ago. DHS has since reinstated his Global Entry credentials. So the Secretary argues that this case is moot because Morrison has already gotten everything he wanted. The Court agrees. The Secretary's motion to dismiss for lack of subject-matter jurisdiction will be granted.

---

[1] These Defendants have been substituted as the current officials leading the Department of Homeland Security and Customs and Border Protection under Federal Rule of Civil Procedure 25(d).

1

I.

The Global Entry program allows pre-approved, low risk travelers to pass more quickly through airport processing lines. *Global Entry*, U.S. Customs & Border Prot. (2025).[2]  Congress directed the Department of Homeland Security to establish an "international registered traveler program" that would "[e]xpedit[e] the travel of previously screened and known travelers across the borders of the United States."  8 U.S.C. § 1365b(k).  DHS then promulgated regulations creating the Global Entry program and allowing certain U.S. residents to apply.  8 C.F.R. § 235.12(b).  Travelers hoping to enroll must apply, pay a nonrefundable fee, and undergo an interview.  *Id.* § 235.12(d)–(e).

Those regulations give DHS a lot of say about who enters the country.  A Global Entry application may be denied or revoked if Customs and Border Protection "determines," "at its sole discretion," that a person is "not a low-risk traveler."  8 C.F.R. § 235.12(b)(2).  CBP may make that decision for many reasons, including violating criminal or civil laws or regulations, providing false application information, failing to follow program terms and conditions, being investigated by law enforcement, or simply that "CBP, at its sole discretion, determine[d] that such action is otherwise necessary."  *Id.*; *id.* § 235.12(j)(2)(i)–(v).

When CBP removes a traveler from the program, it must "notify the participant of his or her suspension or removal in writing.  Such suspension or removal is effective immediately."  *Id.* § 235.12(j)(3).  To be clear, a traveler denied Global Entry may still enter the United States; he simply may not use the expedited airport lines the program otherwise opens.  Mot. Dismiss, ECF No. 14, at 4.

---

[2] https://perma.cc/4AA3-3GFV.

Bruce Morrison first became a Global Entry traveler in 2014. Compl., ECF No. 1, ¶ 1. He received a five-year extension in 2019. Compl. ¶¶ 1, 19. Morrison is a former member of the U.S. Congress from Connecticut, serving his state from 1983 to 1991. Am. Compl. ¶ 9. During that time, he chaired the House Immigration Subcommittee and sat on the U.S. Commission on Immigration Reform. Am. Compl. ¶ 9.

In October 2022, CBP notified Morrison that his Global Entry had been suspended, effective immediately. Compl. ¶¶ 1, 18. It said simply, "You do not meet program eligibility requirements," then listed the possible revocation bases in the regulation. Mot. Dismiss at 4 (citing A.R. at CBP000028). Morrison believes that CBP revoked his Global Entry status in retaliation for his "representation and advocacy on behalf of clients as an attorney or lobbyist." Compl. ¶ 35. As evidence, he alleges that his son was detained and questioned about his father's business at Newark Airport. Compl. ¶ 22.

Morrison filed a new application for Global Entry in February 2024. Mot. Compel at 8. After no response for three months, he filed suit in this Court. Compl. (filed June 18, 2024). In August 2024, CBP approved his re-application. Mot. Dismiss at 5 (citing AR 000042). His Global Entry membership has been in effect since then. *Id.* When CBP reinstated Morrison, the risk assessor "reviewed the derogatory information [responsible for the October 2022 revocation] and deemed it currently insufficient to deny the reapplication." Opp. Mot. Dismiss, ECF No. 16, at 4 (citing AR 000036).

The Secretary argues that Morrison's claims are moot after his reinstatement. Mot. Dismiss, ECF No. 14, at 6–7. Morrison opposes dismissal. Opp. Mot. Dismiss at 8–9. He also moved to compel CBP to reveal the redacted information and any other reasoning underlying his Global Entry revocation. Mot. Compel, ECF No. 15. These motions are ripe for consideration.

## II.

Federal courts must presume that a "cause lies outside [their] limited jurisdiction." *Kokkonen v. Guardian Life Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of overcoming that presumption. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court accepts factual allegations in the complaint as true, but those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion [to dismiss for lack of subject-matter jurisdiction] than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom., Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Id.* at 275 (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

## III.

The Secretary contends that this Court has no subject-matter jurisdiction over Morrison's suit because he already received the relief that his Complaint requested. Mot. Dismiss at 6–7.[3] His Global Entry status has been fully restored. *Id.* Morrison responds that he still wants vindication: This Court should declare that DHS was in the wrong when it revoked his status and, more, require it to reverse that revocation. Opp. Mot. Dismiss at 8–9.

The relevant question is whether events have "so transpired" after the Complaint's filing that the Court's ruling will not "presently affect the parties' rights nor have a more-than-

---

[3] Morrison briefly suggests that he requires a letter from the Attorney General authorizing the U.S. Attorney's position here. Opp. Mot. Dismiss at 7 n.5. He lifts this issue from an Executive Order targeting independent regulatory agencies that expands presidential power over those entities. Exec. Order No. 14215, 90 C.F.R. 10,447, 10,448 (2025). That seems far afield. More, the Executive Order explicitly denies "creat[ing] any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, agents, or any other person." *Id.* at 10,449. Finally, Morrison does not meaningfully suggest why this Court should doubt the Chief of the Civil Division's authorization of the briefing to signify proper executive oversight for Defendants' litigation position. Mot. Dismiss at 11.

4

speculative chance of affecting them in the future." *Clark v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990). Article III confines federal courts' limited jurisdiction to "adjudicating actual cases and controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (cleaned up). The principle is rooted in the "separation of powers" that safeguards "concern about the proper—and properly limited—role of the courts in a democratic society." *Id.*

Plaintiffs must persuade the Court that they have a "case or controversy" by demonstrating that they have "a personal stake in the outcome" that is "extant at all stages of review, not merely at the time the complaint is filed." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385, 391 (2018). In this way, federal courts avoid issuing "advisory opinions" that they have "no power to render." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (cleaned up).

Once the party invoking the Court's jurisdiction makes that initial showing, an opposing party asserting that a case is moot bears the burden to show it. *Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022). After that, the party opposing mootness must show that an exception applies. *S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005); *accord Alphabet Workers Union-Commc'n Workers of Am. v. NLRB*, 134 F.4th 1217, 1225–26 (D.C. Cir. 2025). As applied here, the Secretary must show that the case is moot, and Morrison must respond with an exception to that doctrine.

The Secretary has cleared her hurdle. Morrison's Global Entry status has been fully active since August 2024. Mot. Dismiss at 6–7 (citing AR 000028). His Complaint requested, among other things, a writ of mandamus "compelling Defendants and those acting under them to perform their duty to complete all steps necessary to reinstate Plaintiff's Global Entry membership." Compl. at 11–12, ¶¶ C–D. It is uncontested that Defendants have completed all

5

steps necessary to reinstate his membership.  Opp. Mot. Dismiss at 4.  Thus, an event has "transpired" since Morrison filed his Complaint that mooted the relief he requested.  *Clark*, 915 F.2d at 701.

Morrison responds that an exception applies because this harm is "capable of repetition, yet evading review."  Opp. Mot. Dismiss at 9; *S. Pac. Terminal Co. v. Interstate Comm. Comm'n*, 219 U.S. 498, 514–16 (1911).  Courts recognize this exception when a short-term harm repeatedly would evaporate before a litigant could obtain redress in court.  *S. Pac. Terminal Co.*, 219 U.S. at 514–16.  Consistently declaring such cases moot would prevent review of such harms.  *Id.*  Classic examples include one-year licenses and pregnancy.  *Id.*; *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 325–26 (D.C. Cir. 2009); *United States v. Frumento*, 552 F.2d 534, 537 (3d Cir. 1977).

To invoke this exception, Morrison must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  In general, "orders of less than two years' duration ordinarily evade review."  *Burlington N. R.R. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996).  Morrison's Global Entry was revoked in October 2022 and reinstated in August 2024.  Opp. Mot. Dismiss at 3–4.  So far, so good.

But the short duration must be "typical of the challenged action."  *Del Monte*, 570 F.3d at 322.  That is not the case here.  The regulations do not mention any term limits for revocations.  8 C.F.R. § 235.12.  In fact, they call revocation "removal," suggesting permanency unless the traveler seeks redress through agency appeal or other inquiry.  *Id.* § 235.12(j)–(k).  Morrison makes no argument that revocations generally are too short to be reviewed.  *See* Opp. Mot.

6

Dismiss at 5–9.  He only says that his revocation was too short, and that perhaps the agency *could* make them too short.  *Id.*

This case's own procedural history belies Morrison's suggestion.  He originally received Global Entry status for five years and the agency renewed it for three before revoking, then that revocation was not time limited.  Compl. ¶¶ 1, 17–20.  The D.C. Circuit has been clear that a short duration must be "typical of the challenged action" to qualify for the mootness exception.  *Del Monte*, 570 F.3d at 322.  Because Morrison has not carried his burden as to the first prong, the Court need not address the second.  *See Murphy*, 455 U.S. at 482 (establishing a conjunctive test).

Finally, Morrison also seems to argue that even if his injunctive relief is mooted, his declaratory relief is not—though his brief is not entirely clear.  Opp. Mot. Dismiss at 8 (rebutting mootness by emphasizing that his "prayer also seeks relief in the form of the [sic] declaring" that the revocation was unlawful).  If Morrison made this argument, the analysis simply re-routes the Court back to the usual mootness exceptions.  If plaintiffs "attack[] an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine."  *City of Houston, Tex. v. Dep't of Housing & Urb. Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (cleaned up).  The Court has already found that Morrison did not carry his burden to demonstrate that an exception to mootness applies here.  So the same would be true even if he tried to carry forward just his declaratory relief.

\* \* \*

There is another mootness exception— voluntary cessation. But Morrison forfeited any argument that it applies here. He only mentions it in his reply to an entirely different motion. Reply Mot. Compel at 5–8. Recall that he bears the burden of showing that a mootness exception applies. *Alphabet Workers Union-Commc'n Workers of Am.*, 134 F.4th at 1225–26. "Although a party cannot forfeit a claim that we *lack* jurisdiction, it can forfeit a claim that we *possess* jurisdiction." *Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) (emphasis added); *accord Huron v. Cobert*, 809 F.3d 1274, 1279–80 (D.C. Cir. 2016). And "district courts, like th[e D.C. Circuit], generally deem arguments made only in reply briefs to be forfeited." *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010). Let alone replies made to unrelated motions.

In the D.C. Circuit, forfeiture applies equally to broader issues and arguments or legal theories within those issues. *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("This [forfeiture principle] applies equally to issues and arguments."). Morrison has thus forfeited any claim that the legal theory of voluntary cessation applies to the parties' debate about the mootness issue.

### IV.

In sum, the Secretary has shown that this case is moot. Morrison has not shouldered his burden to show that an exception applies. So the Court must dismiss the case for lack of subject-matter jurisdiction. Morrison's pending Motion to Compel also must be dismissed for lack of subject-matter jurisdiction. An appropriate Order will issue today.

Dated: September 16, 2025                                    TREVOR N. McFADDEN, U.S.D.J.